United States District Court
Eastern District of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EPAFRODITE GERALD DINGA,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX, *et al.*,

Respondents.

Case No. 1:26-cv-04266 (EJD)

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. No. 1

This habeas action concerns the detention of Petitioner Epafrodite Gerald Dinga, a noncitizen who has lived in the United States since being released on November 6, 2022 by immigration authorities. Dkt. No. 1 ¶ 25. Based on the Government's new interpretation of 8 U.S.C. § 1225(b)(2), Petitioner was detained without any finding of changed circumstances demonstrating that he was a flight risk or danger to the community. For the reasons explained below, the Court GRANTS Petitioner's writ of habeas corpus

## I. BACKGROUND

Petitioner is a citizen of Angola who entered the United States on November 4, 2022 through the San Ysidro Port of Entry with his mother and siblings. *Id.*; Dkt. No. 5 at 18. Upon entry, he was "encountered by [a] Border Patrol Agent … approximately one mile west of San Ysidro, California, Port of Entry" and "transported to the Imperial Beach Patrol Station for further processing[.]" Dkt. No. 5 at 18. Several days later, the Department of Homeland Security ("DHS") elected to release Petitioner and his family members on their own recognizance "[i]n accordance with section 236 of the

Immigration and Nationality Act[.]" Dkt. No. 1-3 at 2; *see also* Dkt. No. 1 ¶ 25; Dkt. No. 5 at 19. Since his release nearly four years ago, Petitioner has been living at liberty in the United States, kept a clean criminal record, and has attended all of his immigration check-ins. Dkt. No. 1 ¶ 28; Dkt. No. 5 at 23. Petitioner was re-detained by Immigrations and Customers Enforcement ("ICE") on November 26, 2025 while attending a scheduled immigration check-in, and transported to a detention facility in Texas. Dkt. No. 5 at 22; Dkt. No. 1 ¶ 29. He was later transferred to the Golden State Annex in McFarland, California, where he remains detained.

Petitioner argues in the instant petition that his re-detention without a finding of flight risk or danger to the community violates the due process clause of the Fifth Amendment (count 1) and the Immigration and Nationality Act ("INA") (count 2). *Id*. ¶¶ 34–46. He requests that the Court either grant his immediate release or order a bond hearing before an immigration judge. *Id*. at 11. While acknowledging that this "current case mirrors the issues in numerous cases decided by the Courts in the Eastern District of California to find the Government's legal position to be incorrect and the alien's detention unlawful[,]" Respondents argue that Petitioner's detention is mandatory under 8 U.S.C. § 1225(b). Dkt. No. 5 at 2.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

United States District Court
Eastern District of California

## I. DISCUSSION

Before turning to Petitioner's due process claim, the Court addresses whether Petitioner may be mandatorily detained under 8 U.S.C. § 1225(b) as Respondents contend.[1] *See* Dkt. No. 5 at 2–3. This Court—as well as the majority throughout the Ninth Circuit—have already concluded that Section 1225(b) does not apply to non-citizens like Petitioner who were previously released by the Government on their own recognizance. *See, e.g.*, *Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, * 8–12 (N.D. Cal. Sept. 12, 2025); *Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2025 WL 2677125, at *4 (N.D. Cal. Sept. 18, 2025); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228-JLT-SAB, 2025 WL 2879514, at *11 (E.D. Cal. Oct. 9, 2025). "Such expansive interpretation … is unlawful as applied to non-citizens," like Petitioner, "who have been released by DHS on their own recognizance into the interior of the country." *Cornejo v. Andrews*, 823 F. Supp. 3d 1085, 1094 (E.D. Cal. 2026).

As the Government makes no further argument regarding the basis for Petitioner's detention, the Court next turns to Petitioner's due process claim. Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

---

[1] The Court notes that Petitioner previously sought habeas relief in the Norther District of Texas, which was denied on a finding that Petitioner must be detained under §1225(b)(2)(A) of the INA. *See* Dkt. No. 1-5. Respondents did not raise this order as a basis for denial of the petition, so the Court need not address that argument here. However, the Court notes that since Petitioner was denied habeas relief in Texas and transferred to a detention facility in this district, the Ninth Circuit has rejected the argument that non-citizens like Petitioner may be detained without bond under § 1225(b)(2)(A). *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026) ("aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)"). In light of this intervening authority, refusing to entertain Petitioner's claims in this second petition would be "a fundamental miscarriage of justice[.]" *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011) ("Under the abuse of the writ doctrine, a successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim.").

**i. Liberty Interest**

Petitioner contends that his previous release from immigration custody by the affirmative act of the Government pursuant to § 1226, and then the nearly three years of freedom that followed, gave rise to a protected liberty interest. *See* Dkt. No. 1 ¶¶ 38–40. The Court agrees.

The regulations that authorize immigration authorities to release a noncitizen on his own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8); *see also*, *Cordero Pelico v. Kaiser*, No. 25-CV-07286-EMC, 2025 WL 2822876, at *7 (N.D. Cal. Oct. 3, 2025) ("Under federal regulation, DHS was authorized to release them under § 1226 only upon a determination that 'such release would not pose a danger to property or persons' and that they were 'likely to appear for any future proceeding.'"). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). "Thus, DHS may generally not re-arrest a previously released noncitizen absent a change in circumstances." *Singh v. Noem*, No. 26-CV-0932-GPC-MMP, 2026 WL 468159, at *2 (S.D. Cal. Feb. 18, 2026) (internal quotation omitted).

The record before the Court indicates that immigration authorities determined that Petitioner was neither a flight risk nor dangerous when they chose to release Petitioner on his own recognizance over four years ago. Since his release, Petitioner has kept a clean criminal record and attended all of his immigration check-ins—facts which Respondents do not dispute. As such, the Government's election to release Petitioner provided him with a liberty interest that is protected by the Due Process Clause. *See, e.g.*, *Olivero*, 2026 WL 1162724, at *4; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [the noncitizen] have a liberty interest in remaining out of custody on bond."); *Pinchi v. Noem*, 792 F.Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after

that individual is released from custody she has a protected liberty interest in remaining out of custody."); *He v. Lyons*, No. 25-CV-10639-JSC, 2026 WL 280074, at *3 (N.D. Cal. Feb. 3, 2026) ("Courts throughout the Ninth Circuit have concluded individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond."); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

**ii. Due Process**

Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for almost four years. In the intervening years he was allowed to develop ties in his community while his immigration case progressed. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified

when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690. The record before the Court indicates that there was no independent finding of changed circumstances by a neutral arbiter before Petitioner was re-detained, nor is there any evidence before the Court that Petitioner would be a danger to the community or a flight risk if released. As there have been no procedural safeguards to determine if Petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

The final *Mathews* factor also weighs in Petitioner's favor. Although the Government has a strong interest in enforcing the immigration laws, its' interest in detaining Petitioner without a hearing is "low." *Ortega*, 415 F. Supp. 3d at 970; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Id*. at 1094. If the Government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so[,]" but it must provide Petitioner with a hearing first. *Ortega*, 415 F. Supp. 3d at 970.

## III. CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED. IT IS HEREBY ORDERED that:

1. Respondents immediately release Petitioner from their custody.

2. Respondents shall not impose any additional restrictions on Petitioner, unless they are determined to be necessary at a future pre-deprivation and/or custody hearing.

3. If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing at which the Government will bear the burden of demonstrating by clear and convincing evidence that Petitioner poses a flight risk or a danger to the community if not detained.

4. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

United States District Court
Eastern District of California

5. The Clerk of the Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: September 1, 2026

EDWARD J. DAVILA
United States District Judge